# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL CASE NO. 5:22-cv-00164-MR

AUSTIN REID PITTMAN,         )
                                            )
        Plaintiff,          )
                                           )    **MEMORANDUM OF**
vs.                           )    **DECISION AND ORDER**
                                           )
RONNIE LANE HUNEYCUTT, et al.,  )
                                           )
        Defendants.   )
_____  )

**THIS MATTER** is before the Court on the Motion for Summary Judgment filed by the Defendants Ronnie Lane Huneycutt and Theodore Dow. [Doc. 45].

## I. BACKGROUND

The Plaintiff Austin Reid Pittman filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1] The Plaintiff's verified Amended Complaint passed initial review against Warden Ronnie L. Huneycutt and Nurse Theodore Dow for deliberate indifference to a serious need. [See Docs. 15: Am. Compl.;

_____

[1] The Plaintiff is presently incarcerated at the North Carolina Central Prison.

Doc. 18: Order on Initial Review].  The Plaintiff seeks damages and a jury trial.  [Doc. 5: Am. Compl. at 9].

The Defendants filed a Motion for Summary Judgment and supporting materials.  [Doc. 45: MSJ; Doc. 46: MSJ Memo, Exhibits; Doc. 47: Sealed MSJ Exhibits].  Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court.  [Doc. 49: Roseboro Order].  The Plaintiff filed a Response and materials opposing summary judgment.[2]  [Doc. 51: Plaintiff's Response, Memo., Exhibits; Doc. 52: Plaintiff's Sealed Exhibits].  The Defendants have not replied, and the time to do so has expired.  These matters are ripe for disposition.

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict

---

[2] The Court will also consider the verified Complaint and Amended Complaint in the summary judgment analysis.  [Doc. 1: Complaint; Doc. 15: Am. Compl.]; see Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge").

for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at

3

248.  To that end, only evidence admissible at trial may be considered by the Court on summary judgment.  <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  <u>Anderson</u>, 477 U.S. at 255.  Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."  <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007).  As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts ….  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

<u>Scott</u>, 550 U.S. at 380.

4

## III. FACTUAL BACKGROUND

The forecast of evidence, viewed in the light most favorable to the Plaintiff as the non-moving party, shows the following.

On July 18, 2022, the Plaintiff was in close custody restrictive housing at the Alexander CI due to a previous incident where he had removed his restraints and attempted to escape during a transport. [Doc. 46-5: Huneycutt Decl. at ¶ 9]. On July 19, 2022 at approximately 5:00 p.m., a use of force incident occurred between the Plaintiff and correctional staff wherein the Plaintiff spit at staff and urinated on the floor, and a correctional sergeant punched the Plaintiff in the face.[3] [Doc. 1: Compl. at 2; <u>see</u> Doc. 46-5: Huneycutt Decl. at ¶ 18; Doc. 46-2: MSJ Ex (Incident Report)]. Spitting at staff is considered assault; accordingly, the Plaintiff was placed in hand restraints and a spit hood. [Doc. 46-4: Dow Decl. at ¶ 6; Doc. 46-5: Huneycutt Decl. at ¶ 13].

The Plaintiff was taken to Main Medical for a use of force evaluation by Nurse Dow. [Doc. 1: Compl. at 2; Doc. 46-4: Dow Decl. at ¶ 3]. The Plaintiff was combative and threatened to harm staff and himself, which prevented

---

[3] The Plaintiff filed a separate lawsuit addressing the alleged use of excessive force by Sergeant Clawson, who is not a defendant in this case, Case No. 5:22-cv-156-MR. No claim for the use of excessive force/ failure to intervene passed initial review in the instant case. [<u>See</u> Doc. 18: Order on Initial Review].

5

medical staff from properly and safely examining him. [Doc. 46-4: Dow Decl. at ¶ 7; Doc. 47: Sealed MSJ Ex at 6-8 (7/19/22 Clinical Encounter at 17:46 hrs by Dow; noting that Plaintiff complained that his eye is swollen shut and stating "If you send me to the hospital I am gonna commit suicide by cop")]. Nurse Dow told the Plaintiff that staff would be better able to assess his injury and provide treatment as needed after he calmed down. [Doc. 46-4: Dow Decl. at ¶ 7]. Nurse Dow phoned the doctor, who said that the Plaintiff was to be taken to the emergency room. [Doc. 15: Am. Compl. at 4-5]. At the time, however, prison medical staff did not believe that the Plaintiff's injury was severe enough to be considered life-threatening.[4] [Doc. 46-4: Dow Decl. at ¶ 8; Doc. 47: Sealed MSJ Ex at 6-8].

Warden Huneycutt was informed that the Plaintiff had resisted the placement of restraints, kicked at and attempted to bite staff, attempted to remove the spit shield, threatened to assault others and to commit "suicide by cop" at the hospital, and that his injuries were not life threatening. [Doc. 46-5: Huneycutt Decl. at ¶ 18, 21]. Warden Huneycutt reviewed video footage which supported the information that staff had provided. [Id. at ¶ 18]. When medical staff feel that an inmate has non-life-threatening injuries that

---

[4] The Court need not accept the Plaintiff's unsupported speculation that the delay in treating his injury presented a "risk to [his] life." [Doc. 15: Am. Compl. at 7]; see Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).

need to be treated outside the prison, it is up to the warden to decide when to take the inmate for medical care, based on safety concerns for the inmate, medical staff, officers, and other offenders. [Doc. 46-4: Dow Decl. at ¶ 10]. Warden Huneycutt determined that the Plaintiff's safety, the safety of the prison as a whole, and the safety of the general public at the hospital were best served by prohibiting the Plaintiff's transport to the emergency room until he calmed down and was no longer making threats or assaulting staff. [Doc. 46-5: Huneycutt Decl. at ¶ 21; Doc. 47: Sealed MSJ Ex at 6-8].

The Plaintiff was taken to the Restrictive Housing Unit ("RHU") where he began hitting his head against the cell door. [Doc. 46-4: Dow Decl. at ¶ 8]. The Plaintiff was brought back to the medical center, where a mental health clinician and the officer in charge (OIC) authorized the Plaintiff's placement in four-point restraints as a self-injury precaution, pursuant to policy. [Id.; Doc. 46-5: Huneycutt Decl. at ¶ 15-17, 22; see Doc. 47: Sealed MSJ Ex at 6; Doc. 46-1: MSJ Ex at 1-3]. The Plaintiff continued to be aggressive, violent, and disruptive, and he threatened homicide and self-injury. [Doc. 46-4: Dow Decl. at ¶¶ 8, 11]. Although Nurse Dow determined that the Plaintiff needed to be evaluated at the emergency room after repeatedly hitting his head against the cell door, Dow agreed with Warden Huneycutt's decision that it would be dangerous to transport the Plaintiff to

7

the emergency room in such a violent, agitated, and unreasonable state. [Id. at ¶¶ 9-12].

The Plaintiff was strapped to a bed in the RHU for the rest of the night, in severe pain, and he received no medical treatment. [Doc. 1: Compl. at 3-4; Doc. 15: Am. Compl. at 5; see Doc. 47: Sealed MSJ Ex at 1]. He was observed continuously by correctional staff during this restraint. [Doc. 15: Am. Compl. at 4; Doc. 46-5: Huneycutt Decl. at ¶ 22].

A nurse called the doctor about the Plaintiff the following day at around 7:30 a.m. [Doc. 1: Compl. at 3-4; Doc. 15: Am. Compl. at 4]. The Plaintiff was examined by a medical provider at 8:50 a.m. [Doc. 52 at 6: Response Ex at 6]. Warden Huneycutt agreed to allow the Plaintiff to be transported to the emergency room because the Plaintiff had calmed down, stopped threatening to hurt himself and others, and was no longer dangerous to transport. [Doc. 46-5: Huneycutt Decl. at ¶ 22; Doc. 46-4: Dow Decl. at ¶ 13]. At around 9:30 a.m., the Plaintiff was taken to an outside medical center, where he was diagnosed with an orbital fracture. [Doc. 15: Am. Compl. at 6; Doc. 52: Response Ex at 12]. The Plaintiff returned to the Alexander CI the same day with instructions to treat his pain with Tylenol or Motrin and ice, and to return in two to three weeks for a surgical evaluation. [Doc. 52: Response Ex at 12].

## IV.    DISCUSSION

### A.    Deliberate Indifference to a Serious Medical Need

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To prevail on such a claim a plaintiff must demonstrate "deliberate indifference to serious medical needs" of the inmate.  Id.

A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks omitted).  Deliberate indifference requires a showing that the defendants actually knew of and disregarded an excessive risk to inmate health or safety.  Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  An official acts with deliberate indifference if he had actual knowledge of the prisoner's serious medical needs and the related risks but nevertheless disregards them.  DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018).  The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

9

Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106. "[E]ven if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention." Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), aff'd, 535 F.2d 1250 (4th Cir. 1976).

The undisputed forecast of evidence demonstrates that the delay in treating the Plaintiff's injuries was attributable to the Plaintiff's own conduct, rather than the Defendants' deliberate indifference. Specifically, the forecast of evidence demonstrates that Defendant Dow was unable to adequately assess and treat the Plaintiff due to Plaintiff's aggressive behavior; that Defendant Huneycutt disallowed the Plaintiff's immediate transport to the emergency room due to genuine safety concerns; that the Plaintiff's condition was not believed to be life-threatening; and that the Plaintiff was taken to the emergency room when he had calmed sufficiently. There is no forecast of evidence that the Plaintiff's oppositional behavior ceased or that his condition markedly deteriorated, that the Defendants were aware of the same, and that they nevertheless continued to delay care. See generally Moskos v. Hardee, 24 F.4th 289, 298 (4th Cir. 2022) (delay only constitutes

an Eight Amendment violation where the delay places the prisoner at a substantial risk of serious harm).  The Defendant's desire for immediate treatment and transport, additional phone calls to the doctor, and an earlier utilization review request for emergency care, fail to establish deliberate indifference.  See Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (reaffirming that disagreements between a prisoner and medical staff regarding what treatment is needed fall short of showing deliberate indifference).

Insofar as the Plaintiff complains about the use of four-point restraints, the forecast of evidence demonstrates that four-point restraints were authorized by the OIC and a mental health clinician due to the Plaintiff's self-injurious behavior.  [Doc. 46-5: Huneycutt Decl. at ¶ 22].  There is no forecast of evidence that Defendants Dow and Huneycutt made the four-point restraint decision, that they failed to provide adequate medical monitoring during the restraint period, or that they were aware of any insufficiency in that regard.[5]

---

[5] To the extent that the lack of medical monitoring violated prison policy, this by itself fails to state a cognizable § 1983 claim.  See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

In short, there is no forecast of evidence that the Defendants knowingly disregarded an excessive risk to the Plaintiff's health or safety. The Plaintiff has failed to demonstrate the existence of a genuine dispute of material fact as to the Defendants' deliberate indifference to a serious medical need. Therefore, the Defendants' Motion for Summary Judgment is granted.[6]

## B. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the

---

[6] It is unnecessary to address the Defendants' arguments regarding the use of excessive force because, as noted *supra*, no such claim passed initial review in the instant case.

law." <u>Smith v. Ray</u>, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that the Defendant violated any constitutional right, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

## IV.   CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

<b><u>ORDER</u></b>

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 45] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.** Signed: January 13, 2025

Martin Reidinger
Chief United States District Judge

13